UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

ROBERT JOSEPH ARMSTRONG,

                Plaintiff,

      v.                                          **DECISION AND ORDER**
                                                           18-CV-598S

COMMISSIONER OF SOCIAL SECURITY,

                Defendant.

1.     Plaintiff Robert Armstrong brings this action pursuant to the Social Security Act ("the Act"), seeking review of the final decision of the Commissioner of Social Security that denied her applications for supplemental security income and disability insurance benefits under Title II of the Act. (Docket No. 1.) This Court has jurisdiction over this action under 42 U.S.C. § 405(g).

2.     Plaintiff protectively filed his application with the Social Security Administration on November 28, 2014. Plaintiff alleged disability beginning September 4, 2012, from a motor vehicle accident, due to cervical disk herniation C5-6, C6-7, bilateral carpel tunnel syndrome, bilateral cubital tunnel syndrome, right shoulder rotator cuff tear, depression (R.[1] at 12, 15.). Plaintiff's application was denied, and he thereafter requested a hearing before an administrative law judge ("ALJ").

3.     On March 6, 2017, ALJ Lynette Gohr held a hearing at which Plaintiff—represented by counsel—and Vocational Expert Jeanne Beachler appeared and testified.

---

[1] Citations to the underlying administrative record are designated as "R."

(R. at 66-109.)  Plaintiff was 46 years old on the date of last insured (December 31, 2013) with a high school education and past work experience as a cabinet maker and carpenter.

4. The ALJ considered the case *de novo* and, on May 18, 2017, issued a written decision denying Plaintiff's applications for benefits.  After the Appeals Council denied Plaintiff's request to review the ALJ's decision, he filed the current action, challenging the Commissioner's final decision.[2]  (Docket No. 1.)

5. Both parties moved for judgment on the pleadings under Rule 12(c) of the Federal Rules of Civil Procedure.  (Docket Nos. 12, 18.)  Plaintiff filed a response on September 18, 2019 (Docket No. 20), at which time this Court took the motions under advisement without oral argument.  For the reasons that follow, Plaintiff's motion is **denied**, and Defendant's motion is **granted**.

6. A court reviewing a denial of disability benefits may not determine *de novo* whether an individual is disabled.  See 42 U.S.C. §§ 405(g), 1383(c)(3); Wagner v. Sec'y of Health & Human Servs., 906 F.2d 856, 860 (2d Cir. 1990).  Rather, the Commissioner's determination will be reversed only if it is not supported by substantial evidence or there has been a legal error.  See Grey v. Heckler, 721 F.2d 41, 46 (2d Cir. 1983); Marcus v. Califano, 615 F.2d 23, 27 (2d Cir. 1979).  Substantial evidence is that which amounts to "more than a mere scintilla," and it has been defined as "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."  Richardson v. Perales, 402 U.S. 389, 401, 91 S. Ct. 1420, 1427, 28 L. Ed. 2d 842, 852 (1971). Where evidence is deemed susceptible to more than one rational interpretation, the

---

[2] The ALJ's May 18, 2017, decision became the Commissioner's final decision on this matter when the Appeals Council denied Plaintiff's request for review.

Commissioner's conclusion must be upheld.  See Rutherford v. Schweiker, 685 F.2d 60, 62 (2d Cir. 1982).

7. "To determine on appeal whether an ALJ's findings are supported by substantial evidence, a reviewing court considers the whole record, examining the evidence from both sides, because an analysis of the substantiality of the evidence must also include that which detracts from its weight." Williams *ex rel.* Williams v. Bowen, 859 F.2d 255, 258 (2d Cir. 1988).  If supported by substantial evidence, the Commissioner's finding must be sustained "even where substantial evidence may support the Plaintiff's position and despite that the court's independent analysis of the evidence may differ from the [Commissioner's]." Rosado v. Sullivan, 805 F. Supp. 147, 153 (S.D.N.Y. 1992).  In other words, this Court must afford the Commissioner's determination considerable deference and will not substitute "its own judgment for that of the [Commissioner], even if it might justifiably have reached a different result upon a *de novo* review." Valente v. Sec'y of Health & Human Servs., 733 F.2d 1037, 1041 (2d Cir. 1984).

8. The Commissioner has established a five-step sequential evaluation process to determine whether an individual is disabled under the Act.  See 20 C.F.R. §§ 404.1520, 416.920.  The Supreme Court of the United States recognized the validity of this analysis in Bowen v. Yuckert, and it remains the proper approach for analyzing whether a claimant is disabled.  482 U.S. 137, 140-142 (1987).

9. The five-step process is as follows:

> First, the [Commissioner] considers whether the claimant is currently engaged in substantial gainful activity.  If he is not, the [Commissioner] next considers whether the claimant has a "severe impairment" which significantly limits his physical or mental ability to do basic work activities.  If the claimant suffers such an impairment, the third inquiry is whether, based

3

>    solely on medical evidence, the claimant has an impairment which is listed in Appendix 1 of the regulations. If the claimant has such an impairment, the [Commissioner] will consider him disabled without considering vocational factors such as age, education, and work experience; the [Commissioner] presumes that a claimant who is afflicted with a "listed" impairment is unable to perform substantial gainful activity. Assuming the claimant does not have a listed impairment, the fourth inquiry is whether, despite the claimant's severe impairment, he has the residual functional capacity to perform his past work. Finally, if the claimant is unable to perform his past work, the [Commissioner] then determines whether there is other work which the claimant could perform.

Berry v. Schweiker, 675 F.2d 464, 467 (2d Cir. 1982) (per curiam) (quotations in original); see also 20 C.F.R. § 404.1520; Rosa v. Callahan, 168 F.3d 72, 77 (2d Cir. 1999).

10. Although the claimant has the burden of proof on the first four steps, the Commissioner has the burden of proof on the fifth and final step. See Bowen, supra, 482 U.S. at 146 n.5; Ferraris v. Heckler, 728 F.2d 582, 584 (2d Cir. 1984). The final step is divided into two parts. First, the Commissioner must assess the claimant's job qualifications by considering her physical ability, age, education, and work experience. Second, the Commissioner must determine whether jobs exist in the national economy that a person having the claimant's qualifications could perform. See 42 U.S.C. § 423(d)(2)(A); 20 C.F.R. § 404.1520(f); see also Heckler v. Campbell, 461 U.S. 458, 460 (1983).

11. The ALJ analyzed Plaintiff's claim for benefits under the process set forth above. At step one, the ALJ found that Plaintiff did not engage in substantial gainful activity during the period from his amended alleged onset date of September 4, 2012, through the date last insured of December 31, 2013. (R. at 12.) At step two, the ALJ found that Plaintiff had the following severe impairment: cervical disk herniation C5-6, C6-

7, bilateral carpel tunnel syndrome, bilateral cubital tunnel syndrome, right shoulder rotator cuff tear, depression. Id. At step three, the ALJ found that Plaintiff does not have an impairment or combination of impairments that meets or medically equals any impairment(s) listed in 20 C.F.R. Part 404, Subpart P, Appendix 1. Id. at 12-14.

12. Next, the ALJ found that Plaintiff retained the residual functional capacity ("RFC") to perform light exertion work but with the following nonexertional limitations:

> [Plaintiff] can lift/carry up to 10 pounds; frequently climb ramps/stairs; never climb ladders, ropes or scaffolds; never crawl; and occasionally stoop, crouch and kneel. He can frequently (but not constantly) perform fine and gross manipulation with the bilateral upper extremities, occasionally reach overhead with bilaterally upper extremities, and perform rotation of his neck 45 degrees to the right and left of center. He cannot perform jobs that require driving as part of the job duties. This individual is limited to simple, routine tasks, making simple work-related decisions, and with minimal changes in work routines and processes.

(R. at 14.)

13. At step four, the ALJ found Plaintiff was unable to perform any past relevant work. (R. at 19.) At step five, due to his additional limitations beyond performing light exertion work, the ALJ asked the vocational expert whether jobs exist in significant numbers in the national economy that Plaintiff could perform. The expert opined that a hypothetical claimant with Plaintiff's RFC, age, education, and work experience could perform such jobs as a furniture rental clerk, gate guard, or storage facility clerk, each light exertion work. (R. at 19-20, 98-100.) Accordingly, the ALJ found that Plaintiff is not disabled. (R. at 20.)

14. Plaintiff argues that the RFC determination is not supported by substantial evidence because (1) the ALJ failed to properly weigh medical opinion evidence, ignoring (without explanation) the opinions and findings of his treating physicians (Drs. Thaddeus

5

Szaranowicz, on Plaintiff's ability to overreach (R. at 269, 16), and Zair Fishkin, recommending avoiding aggravating activities (R. at 302, 336-40, 18-19)) as to functional limitations; (2) the ALJ discredited Plaintiff's complaints of pain, numbness, and tingling; (3) the ALJ's finding of light work was flawed since it was not based on substantial evidence and unsupported by opinions of physicians or record; and (4) the ALJ erred in considering the effect of Plaintiff's depression.  (Docket No. 12-1, at 1, 16-19, 19-21, 21-24, 24-25.)  Defendant argues that the ALJ properly evaluated both Plaintiff's physical and mental RFC.  (Docket No. 18-1, at 11-18.)  Each argument is discussed in turn.

15. Regarding the ALJ's consideration of the opinions from Plaintiff's treating physicians, a Plaintiff's RFC, both mentally and physically, is his "'maximum remaining ability to do sustained work activities in an ordinary work setting on a continuing basis,'" Melville v. Apfel, 198 F.3d 45, 52 (2d Cir. 1999) (quoting SSR 96–8p, 1996 WL 374184, *2 (July 2, 1996)).  When making an RFC assessment, an ALJ is tasked with "weigh[ing] all of the evidence available to make an RFC finding that [is] consistent with the record as a whole."  Malta v. Astrue, 508 F. App'x 53, 56 (2d Cir. 2013).  All "[m]edical opinions, regardless of the source, are evaluated considering several factors outlined in 20 C.F.R. §§ 404.1527(c), 416.927(c)."  House v. Astrue, No. 5:11-CV-915(GLS), 2013 WL 422058, *2 (N.D.N.Y., Feb. 1, 2013).

16. First, Plaintiff argues that the ALJ should have considered the findings of Drs. Szarzanowicz and Fishkin that Plaintiff had weakness in elevating his arms beyond 90° (R. at 265.) and recommended aggravating activity including heavy overhead lifting (R. at 298.) (No. 12-1 at 17-18.).  Dr. Fishkin's plan of August 15, 2013, which noted avoiding aggravating activity also did not recommend surgical intervention (R. at 298.).

6

The ALJ acknowledged from this report that Plaintiff was "doing relatively well" and that electrodiagnostic studies of his arms were normal (R. at 296, 17.) and assigned partial weight to Dr. Fishkin's opinion agreeing with the assessment to avoid "excessive/heavy lifting" (R. at 18, citing R. at 298.). The RFC recognized that Plaintiff could lift up to 10 pounds, less than the heavy lifting he was advised to avoid and noted that he could "occasionally reach overhead" with his arms (R. at 14; see Docket No. 18-1 at 14-15.). Plaintiff argues that this is contradictory to Dr. Fishkin's finding of avoidance of aggravating activity and not lifting greater than 10 pounds (Docket No. 12-1 at 18); these are not contradictory.  The ability to lift up to 10 pounds does not include lifting more than that amount, and occasional overhead reach is not aggravating activity such as repetitive motions.  It is also not contradictory when Plaintiff testified that he could lift only 8 pounds that the ALJ concluded that he could lift up to 10 pounds.  (R. at 95, 14.).  The ALJ considered both doctors' opinions in forming the RFC (R. at 16, 17, 264, 296, 298.).  The ALJ also relied upon the opinion of the vocational expert (R. at 20), who selected the jobs someone in Plaintiff's situation could perform because "they did not require frequent reaching, handling or fingering."  (R. at 101.)

17.     Second, Plaintiff argues that the ALJ did not consider Plaintiff's descriptions of his ability to perform certain tasks or activities and his description of his symptoms, including suffering pain, numbness and tingling.  (Docket No. 12-1 at 20; Docket No. 20 at 1-4; R. at 337, 324, 264, 583, 599, 304, 614-15.)  Again, the ALJ noted Plaintiff's complaints of weakness, numbness, and shaking of his right arm when lifted beyond 90°.  (R. at 16, 17.)

18.     SSR 16-3p requires the ALJ to "consider all of the evidence in an individual's record when they evaluate the intensity and persistence of symptoms," SSR 16-3p, 2016 SSR LEXIS 4, at *2 (2016). If symptoms suggest a greater impairment than can be shown by objective evidence alone, the ALJ considers such factors as the claimant's daily activities; the nature, location, onset, duration, frequency, radiation, and intensity of pain and other symptoms; precipitating and aggravating factors; the type, dosage, effectiveness, and adverse side effects of medication the claimant has taken; treatment other than medication that the claimant has taken for relief of pain and other symptoms, and any measures which the claimant has used to relieve the pain or other symptoms, Toro v. Chater 937 F. Supp. 1083, 1086 (S.D.N.Y. 1996), citing 20 C.F.R. § 404.1529(c)(3). (Docket No. 12-1 at 19.)

19.     The ALJ noted Plaintiff's treatments, chiropractic and medical care, deeming that care to be conservative. (R. at 17.) The ALJ thus considered Plaintiff's subjective complaints of pain but found that they were not entirely consistent with the medical evidence and other evidence in the record. (R. at 15.) Plaintiff admitted to driving a vehicle, performing personal care activities, occasionally doing the laundry, loading the dishwasher, and grocery shopping with accompaniment, while not mopping, sweeping or vacuuming. (R. at 15, 76-82; see Docket No. 18-1 at 16-17.)

20.     In his reply (Docket No. 20 at 2), Plaintiff states that, due to neck pain that deprived him of sleep, he naps daily for an hour and a half to two hours (R. at 90-91), concluding that the ALJ did not factor in any off task aspect of his RFC (Docket No. 20 at 2). The ALJ, however, noted plaintiff's testimony that he complained of neck pain, difficulty focusing, and difficulty sleeping (among other complaints) and his July 24, 2013,

questionnaire wherein he claimed trouble sleeping (again with other conditions).  (R. at 15, 1138-40.)  In hypotheticals posed to the vocational expert, the ALJ asked if a claimant like Plaintiff could remain employable if that claimant had to be off task 15% or more of the day, and the expert concluded that this amount of time off work would be work preclusive.  The ALJ then asked if such a claimant required additional breaks for naps remained employable, the expert opined that such a person also would not be employable.  (R. at 101.)

      21.    Regarding Plaintiff's third argument about the lack of substantial evidence for the RFC finding of light work, Plaintiff focuses on the initial finding of light work but not the non-exertional limitations to that finding.  He relies upon part of the definition for light work that for disability coverage, 20 C.F.R. § 404.1567(b); SSR 83-10, emphasizing the duration for standing and sitting and his inability to lift 20 pounds.  (Docket No. 12-1 at 22; Docket No. 20 at 2.)  The ALJ recognized Plaintiff's limitation in lifting weights by including a limitation that he could lift up to 10 pounds.  (R. at 14.)  The record does not indicate any limitation on Plaintiff's standing, save his own testimony that he required naps up to two hours each day.

      22.    Plaintiff concludes that the ALJ did not consider his depression in the RFC, complaining that the ALJ did not discuss these symptoms.  (Docket No. 12-1 at 24-25; Docket No. 20 at 4-5.)  To the contrary, the ALJ did discuss these symptoms.  In giving little weight to the evaluation of the consultative psychologist (R. at 111, 115), the ALJ found that he had "depressive disorder to be of sufficient severity as to result in more than minimal work-related limitations and thus is a severe impairment."  (R. at 18.)  The ALJ noted that Plaintiff complained of depression in March 2013 due to seasonal affective

disorder and in July 2013 upon the death of his mother (R. at 17, 320, 304, 1140.) The ALJ then stated Plaintiff's mode improved during the summer of 2013, with Plaintiff having purchased a motorcycle and leaving the house more often. (R. at 17.) The ALJ also noted Plaintiff's mental status examination on July 23, 2013, "revealed a blunted affect low energy, passivity, limited/controlled social interactions, avoidance, feelings of worthlessness grief, loss, stress, panic/anxiety attacks, insomnia, depression, anger, resentment, loneliness and mood swings, but with increased insight, no appetite issues and no suicidal/homicidal ideation." (R. at 17; 648, 1140, 1192.) In August, Plaintiff felt some improvement with a change of medication, but he still did not sleep well, had trouble focusing and concentrating and felt overwhelmed. (R. at 17-18; 644.) By November 2013, Plaintiff reported that he was on venlafaxine and nortriptyline and reported being very happy with his mood. (R. at 18, 640.) Plaintiff's December 2013 evaluation noted that Plaintiff had a blunted affect, his mood was anxious, nervous, depressed, sad, tearful, he was frustrated and overwhelmed, angry, resentful, and with mood swings. (R. at 18, 1187.)

23. Plaintiff cites to mental health evaluations that occur **after** the date last insured on December 31, 2013, that do not establish the state of his mental health during the insured period (September 4, 2012, to December 31, 2013) (Docket No. 12-1 at 25; R. at 18, 1142, 1147, 1172, 1176, 1179, 1185.)

24. Plaintiff also points to missing a July 8, 2013, appointment due to his depression. (Docket No. 12-1 at 25; R. at 652.) This, however, may have been a unique instance due to the death of a family member. The doctor at UBMD Family Medicine who reported that missed appointment also noted that Plaintiff had recently lost his uncle and

10

that his mother had a stroke. (R. at 652.) Plaintiff did not indicate subsequent missed appointments due either to his depression. This is not enough for the ALJ to include limitations regarding plaintiff being off task.

25. The ALJ included in the RFC limitations for simple and routine tasks to address Plaintiff's mental impairments. (R. at 14; see Docket No. 18-1 at 18.) At step two, the ALJ applied the "Paragraph B" criteria for Listing 12.04 and found that Plaintiff had moderate limitations in his ability to concentrate, persist, or maintain pace. (R. at 13.)

26. From the mental health evaluations, Plaintiff's condition fluctuated during the insured period, with Plaintiff receiving counseling and medication. He has not shown that treating sources advised restrictions on Plaintiff's work due to his mental state.

27. As noted by Dr. Kathleen Conroy, Ph.D., Plaintiff's chief source of his depression was his inability to return to his past work as a carpenter. (R. at 1188, 1192.) As the ALJ concluded, Plaintiff's condition has not barred him from other work.

For the foregoing reasons, this Court finds that substantial evidence in this record supports the ALJ's disability determination. Remand is therefore **not warranted**.

IT HEREBY IS ORDERED, that Plaintiff's Motion for Judgment on the Pleadings (Docket No. 12) is **DENIED**.

FURTHER, that Defendant's Motion for Judgment on the Pleadings (Docket No. 18) is **GRANTED**.

FURTHER, that the Clerk of Court is directed to CLOSE this case.

SO ORDERED.

Dated:   April 15, 2020
         Buffalo, New York

                                             s/William M. Skretny
                                          WILLIAM M. SKRETNY
                                          United States District Judge